UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Case No. 1:25-cv-02155 (JLR) |
| -against- | **OPINION AND ORDER** |
| GLEN LEIBOWITZ, | |
| Defendant. | |

JENNIFER L. ROCHON, United States District Judge:

Defendant Glen Leibowitz ("Leibowitz") is a certified public accountant and was the

Chief Financial Officer of Acreage Holdings, Inc. ("Acreage"), a cannabis company.  In this civil

enforcement action, Plaintiff Securities and Exchange Commission (the "Commission" or

"SEC") alleges that Leibowitz fraudulently inflated Acreage's cash balance, then covered up his

wrongdoing by falsifying Acreage's accounting records and lying to its outside auditor.  The

Commission contends that, together, these actions violated the Securities Exchange Act of 1934

(the "Exchange Act") and certain rules promulgated thereunder and aided and abetted Acreage's

own violations of the Exchange Act.

Acreage is not a party to the Commission's action against Leibowitz.  However,

Leibowitz raised certain affirmative defenses in response to the Commission's complaint,

including, as relevant here, that he relied on advice from Acreage's attorneys — specifically,

James Doherty ("Doherty"), Acreage's then–General Counsel — in taking the actions for which

the Commission now seeks to hold him liable.  Under Federal Rule of Civil Procedure ("Rule")

45, Leibowitz sought discovery of certain documents from Acreage to support that defense, and

Acreage, citing privilege, declined to produce them.  Liebowitz and Acreage are now before the

Court on Leibowitz's motion to compel that production from Acreage.

**BACKGROUND**

I.    **Factual Background**

The Commission alleges that Leibowitz participated in a round-trip cash transfer scheme with one of Acreage's affiliates, Entity A.  *See* Dkt. 1 ("Compl.") ¶¶ 1-2.  The scheme arose, according to the Commission, because Acreage was facing a "looming cash shortfall" for 2019, and cash balance was a crucial metric for Acreage's standing in the cannabis industry and its ability to attract investors.  *Id*. ¶¶ 26, 28.  To paper over its financial troubles, Acreage — "[w]ith Leibowitz's knowledge and active participation" — allegedly caused Entity A to "transfer approximately $4.2 million to Acreage on December 26, 2019."  *Id*. ¶ 2.  The payment "was neither a bona fide repayment of debt . . . nor a bona fide short term financing," but rather was intended to "be temporarily parked in Acreage's bank account for just a few days" — just long enough to "increase[] Acreage's existing cash balance as of December 31, 2019 by over 15%," "before Acreage returned [it] to Entity A in early January 2020."  *Id*. ¶¶ 79-80.  Indeed, Entity A transferred the cash to Acreage "with the express understanding that Acreage would return the exact same amount at the beginning of the new year," *id*. ¶ 2, and Acreage did, in fact, return the funds to Entity A on January 3, 2020, *id*. ¶ 92.

The scheme was meant to allow Acreage to report an inflated cash balance on its 2019 financial statement.  *Id*. ¶¶ 41, 45, 59.  According to the Commission, however, that purpose was not realized: Acreage's board of directors was alerted to the transfer, one of the directors "began making inquiries," and in response, Leibowitz made certain accounting entries falsely indicating that Acreage had returned the funds in 2019 rather than 2020.  *Id*. ¶ 4.  Even though Acreage's 2019 financial statements ultimately did not reflect the transfer from Entity A, *id*. ¶ 4, Leibowitz allegedly lied to Acreage's auditors to conceal its purportedly nefarious purpose, *id*. ¶¶ 5-8, 120-41.

## II.     Procedural History

On March 14, 2025, the Commission filed the Complaint, *see generally* Compl., and on April 10, 2025, Leibowitz filed an Answer, *see* Dkt. 12.  In his Answer, Leibowitz asserted thirteen affirmative defenses, several of which invoked his reliance on counsel; most explicitly, in his Eleventh Affirmative Defense, Leibowitz stated that he had "acted in good faith at all times and in reliance upon representations, information, opinions, advice, professional judgment, and statements prepared by one or more accountants, auditors, or attorneys for Acreage."  *Id.* at 28-29.  Leibowitz's Fourth, Ninth, and Tenth Affirmative Defenses further invoked his reliance on others and his acting in good faith.  *See id.* at 27-28.

On May 12, 2025, the Commission moved to strike each affirmative defense that implicated Leibowitz's reliance on counsel, *see* Dkt. 20, arguing that those defenses were precluded because Acreage "ha[d] not yet waived privilege" over Leibowitz's communications with in-house counsel.  *Sec. & Exch. Comm'n v. Leibowitz*, No. 25-cv-02155 (JLR), 2025 WL 2056026, at *2, *4 (S.D.N.Y. July 23, 2025).  On July 23, 2025, the Court denied that motion as premature, because "the attorney-client privilege is held by . . . Acreage," and Leibowitz had "not yet requested that Acreage waive" it.  *Id*. at *5-6.  Therefore, the Court held that Leibowitz "must seek Acreage's waiver of the privilege."  *Id*. at *5 (alteration adopted).

On August 29, 2025, Leibowitz informed the Court that he had "engaged in discussions" with Acreage, and that "[t]o date, Acreage ha[d] not agreed to waive [the] privilege."  Dkt. 39 at 1.  Nevertheless, Leibowitz contended, "there ha[d] been a waiver of privilege in connection with the [Commission] investigation and . . . Acreage ha[d] improperly asserted privilege over certain communications withheld from production from the [Commission]."  *Id*.  At a meet and confer with Leibowitz on September 4, 2025, Acreage agreed "to withdraw its privilege

assertions as to certain documents," but otherwise maintained that there had been no "subject matter waiver of Acreage's privilege."  Dkt. 40 at 2.

On October 8, 2025, Leibowitz filed the instant motion to compel Acreage's production of the documents it had withheld as privileged.  *See* Dkt. 49.  He filed an accompanying memorandum of law, Dkt. 50 ("Br.") and a Declaration of George H. Rowe, Dkt. 51 ("Rowe Decl.") with supporting exhibits.  On November 5, 2025, Acreage filed opposition, Dkt. 53 ("Opp."), along with a Declaration of James Doherty, Dkt. 53-1 ("Doherty Decl.") and a Declaration of Thomas O'Rourke, Dkt. 53-2 ("O'Rourke Decl."), with supporting exhibits.  On November 12, 2025, Leibowitz filed a reply, Dkt. 54 ("Reply"), along with a Declaration of John P. Nowak, Dkt. 55 ("Nowak Decl."), and supporting exhibits.  Acreage also submitted, for *in camera* review in connection with Leibowitz's motion, 28 documents over which it has asserted privilege, and for which it and Leibowitz seek a determination from this Court as to the validity of that assertion.  Leibowitz's motion to compel is therefore fully briefed.  For the following reasons, the motion is GRANTED in part and DENIED in part.[1]

## LEGAL STANDARD

District Courts have "broad discretion to manage the scope of discovery" and to "rul[e] on a motion to compel discovery."  *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999) (citation omitted).  A motion to compel discovery from a non-party is "governed by the relevancy and proportionality guidelines of Rule 26."  *United States v. M/Y Amadea*, No. 23-cv-09304 (DEH), 2024 WL 4471617, at *1 (S.D.N.Y. Oct. 11, 2024) (quoting *Delta Air Lines,*

---

[1] The parties requested oral argument via notation on their briefs.  The Court declines this request, because the parties' briefing was sufficient and oral argument would not materially assist the Court.  *See Dotson v. Griesa*, 398 F.3d 156, 159 (2d Cir. 2005) ("[A] district court acts well within its discretion in deciding dispositive motions on the parties' written submissions without oral argument.").

*Inc. v. Lighthouse Grp.*, No. 21-mc-00374 (RA) (OTW), 2021 WL 2117247, at \*2 (S.D.N.Y. May 24, 2021)).  And Rule 26 permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Bonacasa v. Standard Chartered PLC*, No. 22-cv-03320 (ER) (OTW), No. 23-cv-02834 (ER) (OTW), No. 23-cv-02865 (ER) (OTW), 2025 WL 1948971, at \*2 (S.D.N.Y. July 16, 2025) (quoting Fed. R. Civ. P. 26(b)(1)).

"The party moving to compel discovery 'bears the initial burden of demonstrating that the information sought is relevant and proportional.'"  *Yusupov-Millevoi v. Kingyum Transps. LLC*, 349 F.R.D. 491, 494 (S.D.N.Y. 2025) (quoting *Sportvision, Inc. v. MLB Advanced Media, L.P.*, No. 18-cv-03025 (PGG) (VF), 2022 WL 2817141, at \*1 (S.D.N.Y. July 19, 2022)).  If the moving party meets that burden, then the party opposing the motion must "justify curtailing discovery."  *Ekstein v. Polito Assocs. LLC*, No. 20-cv-01878 (JCM), 2022 WL 783000, at \*3 (S.D.N.Y. Mar. 15, 2022) (quoting *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012)).  Where the opposing party seeks to curtail discovery "on the grounds of . . . privilege," that party "bears the burden of proving the discovery is in fact privileged," *Citizens Union v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017), and thus "bear[s] the burden of establishing [the privilege's] essential elements," *United States v. Krug*, 868 F.3d 82, 86 (2d Cir. 2017) (quoting *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011)).  "Because the claims in this case arise under federal law, federal common law on attorney-client privilege applies."  *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 338 F.R.D. 309, 315 (S.D.N.Y. 2021).  And under federal common law, the elements of

attorney-client privilege are: "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007); *accord Krug*, 868 F.3d at 86.

"The party invoking the privilege also has the burden to show that the privilege has not been waived." *In re Signet Jewelers Ltd. Sec. Litig.*, 332 F.R.D. 131, 134 (S.D.N.Y. 2019) (quoting *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 391 (S.D.N.Y. 2015)); *accord Dorce v. City of New York*, No. 19-cv-02216 (JLR) (SLC), 2024 WL 139546, at *5 (S.D.N.Y. Jan. 12, 2024).[2] Generally, such a waiver occurs when "the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication over which the privilege is claimed." *United States v. Anthem*, No. 20-cv-02593 (ALC) (KHP), 2025 WL 2426482, at *4 (S.D.N.Y. Aug. 22, 2025) (quoting *Fullerton v. Prudential Ins. Co.*, 194 F.R.D. 100, 102 (S.D.N.Y. 2000)). When the privilege-holder is a corporation, and "the corporation as

---

[2] Acreage argues that the party *challenging* privilege must demonstrate that waiver has occurred, *see* Opp. at 13, but the cases it cites do not support that proposition. For example, Acreage cites *N.Y. Hotel & Motel Trades Council v. Hotel Ass'n of N.Y.C., Inc.*, No. 85-cv-00216, 1989 WL 946532, at 6 n.8 (S.D.N.Y. Oct. 17, 1989) — but that case, in turn, cites only *In re Horowitz*, 482 F.2d 72, 80 (2d Cir. 1973), which does not anywhere provide for the burden allocation Acreage advances. In fact, one evidence treatise reads *Horowitz* as standing for the contrary rule and cites the case when listing the Second Circuit as one of the "courts [that] have referred to waiver as a *negative burden* that the privilege proponent must satisfy." Paul R. Rice, 2 Attorney-Client Privilege in the U.S. § 9:22 & n.4 (Dec. 2025). Acreage cites two additional cases on this legal standard, *see* Opp. at 13, but they are equally unavailing. The portion of *In re Residential Capital, LLC*, 575 B.R. 29 (Bankr. S.D.N.Y. 2017) that Acreage quotes in fact applies to the work product doctrine. *Id.* at 44. In discussing attorney-client privilege, however, the bankruptcy court correctly states the rule: "The party asserting the privilege 'also bears the burden of demonstrating that it has not been waived.'" *Id.* at 36 (quoting *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 70 (S.D.N.Y. 2009)). And in *Sec. & Exch. Comm'n v. McGinn, Smith & Co., Inc.*, No. 10-cv-00457, 2011 WL 13136032 (N.D.N.Y. Nov. 15, 2011), although the court did hold that "the burden shift[ed]" to the movant to establish waiver after the opponents had met their burden of demonstrating that the documents at issue were privileged, the court cited no case or other authority to support that holding. *Id.* at *5.

an entity makes the strategic decision to disclose some privileged information, the courts may find implied waiver, as they do in cases involving individuals." *In re Grand Jury Procs.*, 219 F.3d 175, 184 (2d Cir. 2000).

Finally, under Federal Rule of Evidence 502, where a "disclosure is made . . . to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a).

## DISCUSSION

Acreage agrees that the documents and information Leibowitz seeks are "relevant to the claims and defenses in this action," Opp. at 14, and thus Leibowitz clears his initial burden under Rule 26 on his motion to compel. Acreage, in turn, seeks to "curtail[] discovery," *Ekstein*, 2022 WL 783000, at *3, by asserting privilege over the documents and communications in question. *See* Opp. at 14. According to Leibowitz, Acreage has waived that privilege because it "and its agents," Br. at 22, have made selective disclosures to the Commission of privileged information relating to three subject matters: (1) the alleged round-trip transfers between Acreage and Entity A (the "Transfers"), (2) Acreage's subsequent investigation of the Transfers, and (3) Acreage's ultimate accounting of the Transfers, *id.* at 10-11. Leibowitz contends, under Rule 502, that these disclosures were intentional, that they constitute waivers of all privileged communications concerning these subjects, and that, in fairness, Acreage must produce the documents over which it asserts privilege so that those documents and the selective disclosures can be considered together. *Id.* at 19-25.

7

For the reasons that follow, the Court finds that Leibowitz's Rule 502 argument fails at the threshold, because the disclosures he identifies are either not disclosures of privileged information or are not attributable to Acreage; in either case, they do not constitute waivers of Acreage's privilege.  Accordingly, Acreage has satisfied its burden of demonstrating that the documents Leibowitz seeks to compel are privileged, and that Acreage has not waived that privilege.

## I.    The Selective Disclosures

### A.    The Transfers

#### 1.  December 22, 2019 Email Chain

Leibowitz first argues that Acreage effectuated a subject-matter waiver by producing to the Commission a December 22, 2019 email chain that relates to the Transfers and, Leibowitz contends, is privileged.  *See* Br. at 5-6, 19-20.  He argues further that Acreage produced this document to the Commission while still believing it to be privileged, *see id.* at 20, but later withdrew its privilege assertion and produced the document to Leibowitz*, id.* at 23.  Acreage concedes that it initially withheld the document as privileged, *see* Opp. at 4-5, but nevertheless contends that its ultimate production of the document does not amount to a subject-matter waiver, because the document is not, in fact, privileged, *see id.* at 15.  The Court agrees.

This email chain appears to discuss the composition of Entity A's board.[3]  In the first email, the writer notes that one of the "[m]ajor issues concerning the [Entity A] Board right now is paying owed money to Acreage."  Rowe Decl. Ex. H at 3.  The recipient of that message, Robert Daino — Acreage's Chief Operating Officer, *see* Br. at 3 — forwarded it to CEO Kevin

---

[3] Leibowitz identifies Entity A as Prime Alternative Treatment Centers of New Hampshire, *see* Br. at 3, and notes that its interim CEO in the relevant period was Brett Sicklick, *id.* at 5.  The parties and the documents they have submitted to the Court sometimes refer to this entity as "PATC," "Prime," "Prime ATC," or "NH"; the Court will continue to refer to it as "Entity A."

Murphy, Doherty, and one other Acreage employee whom the parties do not identify, adding that "I explained to [Entity A's interim CEO] from a top level of what we are attempting to accomplish and he is uncertain if he has or if he is willing to act without Board authority."  Rowe Decl. Ex. H at 2.  Murphy replied, again keeping Doherty on the chain, "Further update.  I told [the interim CEO] to send the money and he is going to send.  I have known [him] for many years and we have a comfortable relationship."  *Id.*  Doherty does not respond to any email in this chain, and no one asks Doherty to respond or otherwise weigh in on the conversation.

Having reviewed the email chain, the Court agrees with Acreage's decision to re-designate it as not privileged, because it is not privileged: Doherty is copied on the email, but no one on the chain requests legal advice from Doherty, and Doherty does not provide legal advice to anyone on the chain.  *See NRD GP LLC v. Centiva Cap., LP*, No. 24-cv-07245 (MMG), 2025 WL 2782804, at *8 (S.D.N.Y. Sept. 30, 2025) ("The mere fact that an attorney is copied on the email does not transform its content into one that can satisfy the demands of attorney-client privilege . . . ."); *Erie*, 473 F.3d at 419 (holding that privilege attaches to communications "made for the purpose of obtaining or providing legal advice").

The fact that this document is not privileged would have provided a basis for the Court to compel Acreage to produce it to Leibowitz — which Leibowitz concedes Acreage has already done, *see* Br. at 22-23 — but it does not justify a finding of subject-matter waiver.  *See N.Y. Hotel & Motel Trades Council*, 1989 WL 946532, at *6 (holding that producing non-privileged materials does not "form a basis for an implied waiver of additional information").[4]  As Acreage

---

[4] The same analysis applies to the other documents that Leibowitz identifies, over which Acreage withdrew its privilege assertions.  *See* Br. at 9.  The Court has reviewed these documents and agrees they are not privileged, and Acreage's re-designation allows Leibowitz to use them in this case.  *See* Rowe Decl. Ex. K (non-privileged communications between Leibowitz and internal auditor); *id.* Ex. L (non-privileged communications between Leibowitz and outside auditor); *id.* Ex. M (non-privileged communications between Acreage employees concerning movement of

points out, Opp. at 5, Leibowitz now has this document and may use it for any proper evidentiary purpose he wishes; any prejudice he would have faced by the continued withholding of this document is now removed.

The fact that Acreage initially believed parts of this email chain to be privileged (or in any event asserted as much) when it produced it to the Commission does not alter this analysis. *See Stratagem Dev. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535, 544 (S.D.N.Y. 1994) (explaining that "[a]lthough [defendant] initially claimed that the 150 Documents [it produced] were privileged, it withdrew this claim as to 144 of the documents upon further investigation," and holding that because this "change of heart was not done in bad faith," the plaintiff "cannot now contend that [defendant]'s documents were privileged at the time they were produced in this action"); *see also Maenza v. UChicago Argonne LLC*, No. 18-cv-04328, 2019 WL 13276114, at *1-2 (N.D. Ill. May 15, 2019) (finding that, where defendant first asserted privilege over document and produced it to plaintiff in redacted form, then inadvertently re-produced same document unredacted, and finally redesignated the document as not-privileged upon plaintiff's challenge, "[d]efendant now admits[] the email is actually not privileged, [and] its production cannot waive the privilege afforded any other documents"), *objections overruled*, 2019 WL 13276115 (N.D. Ill. June 25, 2019).  *Cf. Kleeberg v. Eber*, No. 16-cv-09517 (LAK) (KHP), 2019 WL 2085412, at *9 (S.D.N.Y. May 13, 2019) (finding that "no selective waiver occurred" where "it appears that the [party] produced the documents in question because they did not contain legal advice and are, thus, not privileged").[5]

---

money from Entity A); *id.* Ex. V (non-privileged communications between Leibowitz and Doherty).

[5] *Kleeberg* applied New York state law in addressing privilege.  2019 WL 2085412, at *6. "However, 'it has long been recognized that New York law on attorney-client privilege is "generally similar to accepted federal doctrine."'" *WCA Holdings III, LLC v. Panasonic*

Therefore, the Court finds that Acreage's disclosure of the non-privileged December 22, 2019 email chain to the Commission does not constitute a subject-matter waiver.

### 2. Doherty Testimony

Leibowitz next argues that Acreage waived its privilege through Doherty, who "disclosed Acreage's privileged information to the SEC when testifying during the [i]nvestigation." Br. at 19; *see id*. at 6-7, 12-14. Acreage argues that Doherty could not have waived its privilege because, at the time of his testimony, he was no longer employed as Acreage's General Counsel and was, instead, its outside counsel. Opp. at 5-7. The Court agrees that Doherty did not waive Acreage's privilege.

"[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). Thus, "[n]ew managers installed as a result of [various processes] or simply normal succession[] may waive the attorney-client privilege with respect to communications made by former officers and directors[, but those] [d]isplaced managers may not assert the privilege over the wishes of current managers." *Id.* at 349. It follows that former managers are also powerless to *waive* that privilege over the corporation's present wishes. *See Fitzpatrick v. Am. Int'l Grp.*, 272 F.R.D. 100, 108 (S.D.N.Y. 2010) ("[T]he federal courts have rejected the notion that a former director or officer, even if previously vested with the power to exercise the privilege while a corporate official (presumably only for corporate purposes), may subsequently claim any authority to exercise *or waive* the privilege at all." (emphasis added)); *cf. Ambrose v. City of White Plains*, No. 10-cv-04946 (CS),

---

*Avionics Corp.*, No. 20-cv-07472 (GHW), 2025 WL 1434375, at *4 (S.D.N.Y. May 17, 2025) (quoting *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 491 (S.D.N.Y. 2019)).

10-cv-05044 (CS), 2011 WL 13290651, at *10 (S.D.N.Y. Sept. 30, 2011) (holding that even if the current mayor had authority to waive the city's privilege, former mayors did not).

Here, Acreage explains (and Leibowitz does not refute) that Doherty left the company "over a year and a half before he testified before the SEC." Opp. at 7. Therefore, the authority to waive Acreage's privilege remained in the office he vacated, not with him. *See Weintraub*, 471 U.S. at 348-49.

Leibowitz argues that Doherty can waive Acreage's privilege even as its outside counsel, *see* Reply at 7, but he omits a crucial component of that power: It requires Acreage's permission. Indeed, "[a]n attorney may not waive the privilege without his client's consent." *In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987). And here, Doherty's own attorney stated at the outset of his testimony before the Commission that Doherty was *not* authorized to waive privilege on Acreage's behalf. *See* O'Rourke Decl. Ex. 2 at 24:23-25:13 (Doherty's counsel: "I spoke to counsel for Acreage [and] asked them whether or not they've had any discussion with [the Commission] about waiver. My understanding is that they have asserted the privilege on any of the work that [Doherty] did either as outside counsel or general counsel. . . . We've also been asked to put on the record that if [Doherty] inadvertently testifies to anything that [Acreage] views as privilege[d][,] that that is not a waiver. He doesn't have permission to waive . . . ."). It is explicit, then, that Doherty did not have his client's consent to waive privilege.

Leibowitz cites three cases to support his argument that Doherty waived Acreage's privilege as outside counsel, but he misreads them as suggesting that outside counsel can *unilaterally* waive privilege. *See* Reply at 7-8 (first citing *In re Steinhardt Partners, LP*, 9 F.3d 230 (2d Cir. 1993); then citing *Bus. Integration Servs., Inc. v. AT&T Corp.*, 251 F.R.D. 121 (S.D.N.Y. 2008), *aff'd*, 2008 WL 5159781 (S.D.N.Y. Dec. 9, 2008); and then citing *United States v. Reyes*, 239 F.R.D. 591 (N.D. Cal. 2006)). True, the Second Circuit noted in *Steinhardt*

that the Commission had "asked Steinhardt's counsel to submit a memorandum that would address" whether the Commission should bring charges against that corporation. *Steinhardt*, 9 F.3d at 232. But the court rightly treated the resulting submission as the *corporation*'s decision (and therefore waiver), not its attorney's. *See id.* at 234 (affirming "[t]he district court's finding that Steinhardt voluntarily disclosed the memorandum to an adversary"). In other words, counsel did not waive the corporation's privilege in *Steinhardt*: the corporation did, by authorizing counsel to make the requested disclosure to the Commission. Similarly, in *Reyes*, a committee of the corporation's board waived the privilege by directing its outside counsel to make certain disclosures to the government. *Reyes*, 239 F.R.D. at 596 (explaining that outside counsel "agreed to meet with officials from the [Commission] and the Department of Justice" "at the direction of" the client); *see id.* at 598 ("[T]he attorney-client privilege is waived upon the voluntary disclosure of protected information by a client, or by an attorney *at the behest of* a client." (emphasis added)). There is no indication that Acreage provided similar authorization or direction here.

Finally, in *Business Integration Services*, the court did not "imput[e] a counsel's disclosure of privileged information to the company," Reply at 8, because that case did not involve a disclosure by counsel: The disclosure was made by the company's own business manager. *See Bus. Integration Servs.*, 251 F.R.D. at 123 (explaining that privileged materials had been disclosed "by Mr. James Glackin, an AT&T regional manager"). The court held that although the business manager was not authorized to waive the corporation's privilege, the corporation itself had waived that privilege because its *in-house* counsel did not "express dissent" when he learned of the unauthorized disclosure. *Id.* at 128. Those facts are not analogous to Doherty's testimony as *former* General Counsel.

13

Leibowitz additionally argues, citing *Business Integration Services*, that Acreage has waived privilege by not objecting to Doherty's testimonial disclosures of certain privileged information. Reply at 8; *see* Br. at 6-7 & n. 7, 12-13 (arguing that Doherty disclosed privileged information during testimony). But the Court disagrees that Doherty disclosed privileged information that would have required Acreage's objection.

Privilege applies to confidential communications between attorney and client that are intended to seek, give, or receive legal advice. *See Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."); *Krug*, 868 F.3d at 86. However, "it is well established that merely testifying that an attorney was consulted, without revealing the substance of those communications, does not waive privilege." *Kleeberg*, 2019 WL 2085412, at *8. For example, in *United States v. Zuckerman*, 88 F. Supp. 2d 9 (E.D.N.Y. 2000), an IRS Special Litigation Assistant testified that he had prepared a report and "made a recommendation" to an IRS attorney on whether to charge the defendant, but he "did not testify about what his recommendation was or any of the details regarding his analysis." *Id.* at 15. The court held that such "[d]isclosure of a general description of the subject matter of a privileged communication does not operate as a waiver of the privilege." *Id.*

*Zuckerman*'s logic applies equally here. When the Commission asked Doherty how he "came to first know about" a planned cash transfer between Entity A and Acreage, he testified that, as "best [he] c[ould] recall," he was aware of the transfer because Leibowitz "and/or" Murphy had asked him whether Acreage could "bring cash . . . into Acreage" from Entity A if the latter owed Acreage money; Doherty further testified that the answer to that question constituted "[a] legal opinion" because it required that he analyze certain corporate documents.

14

Rowe Decl. Ex. D 114:12-116:6.  In his testimony, Doherty did not disclose the opinion he gave to Leibowitz or Murphy, or state whether he gave one at all.  Nor did he definitively state that it was Leibowitz who had asked him about the potential transfer.  Indeed, Doherty testified that he did not "recall the specific call or meeting" where he was asked for his opinion, and that he did not remember whether Entity A actually owed Acreage money at the time because "track[ing]" the corporations' finances "was not part of [his] job." *Id.* at 115:4-116:6.  In other words, like the litigation assistant in *Zuckerman*, Doherty testified as to the topic of a privileged conversation he had, but he did not disclose "what his [legal opinion] was or any of the details regarding his analysis." *Zuckerman*, 88 F. Supp. 2d at 15.  Thus, even if Doherty had authority to waive Acreage's privilege, which he did not, his limited and general testimony would not constitute such a waiver.

Moreover, later in Doherty's deposition, when the Commission asked him directly about what legal advice Acreage employees had sought from him, Doherty's counsel objected.  She explained that Doherty could identify Acreage employees who had approached him for legal advice and, when shown certain communications between himself and Acreage employees, could testify as to "whether or not he believed that he was being asked legal questions and giving legal advice" in those communications — but questions from the Commission as to the content of that legal advice or the specific questions he was asked "[went] too far." O'Rourke Decl. Ex. 2 at 206:21-209:3.  To the extent that Doherty disclosed the general topic of Leibowitz or Murphy's inquiry while explaining the basis of Doherty's own knowledge of the fact of the Transfers, that is not a disclosure of privileged information, and it is therefore insufficient to effectuate a subject-matter waiver. *See Zuckerman*, 88 F. Supp. 2d at 15 (explaining that "a description of the subject matter of a privileged document is usually required in order to preserve the privilege.").

15

Leibowitz's further contention that Acreage has "[n]ever sought to claw back or prevent the use of any of the information that Leibowitz has identified," Reply at 8, is belied by the fact that Acreage continued to assert privilege over emails regarding this very topic and declined to produce them to the Commission on that basis. *See, e.g.*, Rowe Decl. Ex. E, Ref. 91 (asserting privilege over communication that "[r]equests and provides advice regarding [Entity A] loan payment"); *id.* at Ref. 99 (asserting privilege over email that "[r]equests legal advice regarding outstanding loan"); *id.* at Ref. 104 (asserting privilege over email with subject line "NH Interest / Principal payment" that "[p]rovides information for purposes of legal advice regarding outstanding loan"); *id.* at Ref. 122 (same); *see also* Rowe Decl. ¶ 14 (identifying Ex. E as the "privilege log Acreage provided to the SEC"); O'Rourke Decl. Ex. 2 at 25:7-10 ("We've also been asked to put on the record that if [Doherty] inadvertently testifies to anything that the company views as privilege[d] that that is not a waiver.").

Therefore, Doherty did not have authority to waive Acreage's privilege as its former–General Counsel or as its then-current outside counsel; even if he did have that authority, he did not disclose privileged information to the Commission in his testimony. In either instance, Doherty's testimony did not give rise to a waiver of Acreage's privilege concerning the transfer of funds between Entity A and Acreage, and Leibowitz's motion to compel the production of privileged materials relating to that subject-matter is denied.[6]

---

[6] Leibowitz also states in a footnote, and then once later refers back to that footnote in an incomplete parenthetical sentence, that communications between him and Doherty "could clearly constitute" a crime-fraud exception to attorney-client privilege "if the SEC's allegations were accurate." Br. at 3 n.2; *see id*. at 15. The Court will not consider this "drastically underdeveloped" hypothetical argument, "particularly when [it is] raised only in a footnote." *Levy v. Young Adult Institute, Inc.*, 103 F. Supp. 3d 426, 441 (S.D.N.Y. 2015) (collecting cases).

B.    **Investigation of the Transfers**

Leibowitz also seeks to compel the production of certain documents and communications pertaining to Acreage's investigation into the Transfers and their accounting, and he contends that Acreage waived its privilege over these documents and communications through the testimony of Larissa Herda, a former member of Acreage's Board of Directors.  Specifically, Leibowitz contends that Herda waived this privilege by testifying to the Commission about (and producing documents reflecting) (1) her communications with "Stikeman Elliott LLP [("Stikeman")], a law firm engaged in connection with the investigation of the alleged Transfers," (2) privileged conversations between Doherty and Leibowitz that Leibowitz told her about, and (3) accounting decisions that the Board made about the Transfers in consultation with counsel.  Br. at 7-8; Reply at 9-10.  The Court is not persuaded.

As a threshold issue, the parties disagree over whether the privilege that protects Herda's communications with Stikeman belongs to Acreage or to a Special Committee that she chaired. The parties agree that, generally, "a special committee can hold its own privilege," Reply at 9; *see* Opp. at 18; *see also In re BCE West, L.P.*, No. M-8-85, 2000 WL 1239117, at *2 (S.D.N.Y. Aug. 31, 2000) (holding that special committee controlled its own privilege where "the board resolutions expressly provided that [it] could retain counsel independent of" the board's and where that counsel "at no time provided counsel to the [corporation's] general [b]oard or the management"), but they part ways over whether Herda's investigation of the Transfers fell within the Special Committee's purview.  According to Acreage, the Special Committee was "convened to consider the merits of" Acreage's potential acquisition by another entity (Canopy), and Herda retained Stikeman on behalf of the Special Committee "in connection with this task." Opp. at 8.  Thereafter, Herda and the Special Committee also consulted Stikeman concerning "an internal complaint" that Herda had received about, among other topics, the Transfers.  *Id.*  In

Leibowitz's view, the Special Committee was formed "to act solely regarding" the Canopy transaction and "apparently had nothing to do with Herda's investigation into the Transfers and the [internal] [c]omplaint or her communications with Stikeman around nine months later." Reply at 9.

As an additional complication, Acreage represents that the Special Committee "dissolved at some point" after the Canopy transaction. Opp. at 8. Acreage concludes that, upon that dissolution, the Special Committee's privilege "reverted to Acreage's Board," *id.*; *see also id.* at 19 n.10 (arguing the same, first citing *BCE West*, 2000 WL 1239117, at *3; and then citing *In re China Med. Techs.*, 539 B.R. 643, 658 (S.D.N.Y. 2015)). On reply, Leibowitz does not directly address the succession of the Special Committee's privilege post-dissolution, but does contend that "privileges 'do not belong to a corporate board, they belong to the corporation itself, even after it retains an entirely new board.'" Reply at 10 (quoting *Rackwise, Inc. v. Foley Shechter Ablovatskiy, LLP*, No. 19-cv-11094 (AT) (SLC), 2020 WL 7342743, at *6 (S.D.N.Y. Dec. 14, 2020)).

The Court need not weigh in on these questions. Regardless of whether Herda's communications with Stikeman were initially protected by the Special Committee's privilege, and regardless of whether that privilege is currently controlled by Acreage, the fact remains (and Leibowitz does not contest) that Herda held no position at Acreage by the time of her testimony before the Commission. *See* Opp. at 8 (noting that Herda served on Acreage's Board "from 2018 to 2020"); Nowak Decl. Ex. AA at 2 (Herda's Commission testimony, dated March 7, 2024). Therefore, any disclosure by Herda as to her communications with Stikeman could not have effectuated a waiver by Acreage or by Acreage's Board or the Special Committee, for the same reasons that Doherty could not have waived Acreage's privilege as its former General Counsel. *See Weintraub*, 471 U.S. at 349; *Fitzpatrick*, 272 F.R.D. at 108; *Ambrose*, 2011 WL 13290651,

18

at *10.  Likewise, as one of its former directors, Herda could not have waived Acreage's privilege by disclosing the substance of privileged conversations that Leibowitz had with Doherty and "later conveyed" to her, Br. at 7, or by testifying that the Board decided in consultation with counsel "not to report the $4.2 million as Acreage's cash on December 31, 2019," *id.* at 8.

Moreover, as to the latter accounting decision, "merely testifying that an attorney was consulted, without revealing the substance of those communications, does not waive privilege." *Kleeberg*, 2019 WL 2085412, at *8; *see also Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 597 (S.D.N.Y. 2015) ("[A]n individual stating that they did or did not agree with their attorney does not put at issue everything that their attorney said to them."); *Zuckerman*, 88 F. Supp. 2d at 15 ("Disclosure of a general description of the subject matter of a privileged communication does not operate as a waiver of the privilege . . . ."). Herda's testimony was sufficiently limited to this purpose. *See* Rowe Decl. Ex. C at 246:20-247:2 ("[Q.] When -- when did you learn that the company was not going to report this?  This being 4.2 million as our cash on December 31st.  A.  When we decided that they weren't going to do it.  Q.  Okay.  So, that was a decision made at the board level as you understood it?  A.  Yeah.  Yeah.  With counsel, yeah.").

Therefore, Herda's testimony as to her communications with Stikeman, conversations between Leibowitz and Doherty that Leibowitz reported to her, and as to the fact that Acreage consulted counsel in determining how to account for the Transfers, did not waive Acreage's privilege.

## II.    Fairness

The foregoing rulings obviate additional analysis under Rule 502(d), which applies only where a "disclosure is made . . . to a federal office or agency *and waives* the attorney-client

19

privilege or work-product protection." Fed. R. Evid. 502(a) (emphasis added). Having found that Acreage did not waive its privilege, the Court need not (indeed cannot) determine the scope or consequences of such a waiver. *See Pearlstein v. BlackBerry Ltd.*, No. 13-cv-07060 (CM) (KHP), 2019 WL 1259382, at *7 (S.D.N.Y. Mar. 19, 2019) ("When a waiver of attorney-client or work product protection has occurred, the court must address the scope of the waiver."); *see also* Br. at 18 (contending that courts must "determine the scope of the waiver based on the 'fairness doctrine,'" but acknowledging that they do so only "[w]hen a waiver of privilege has occurred").

Thus, the Court is not convinced by Leibowitz's arguments as to fairness, *see* Br. 21-25; Reply at 6. While Leibowitz purports to cite two cases "f[inding] a subject matter waiver where the company's privileged information had been actually disclosed despite the company's refusal to waive privilege," Reply at 6, in both cases those disclosures were made by the company itself. In *Pearlstein*, the company "shared information" with the Commission about the topics at issue. 2019 WL 1259382, at *17; *see also id.* at *18. And in *In re National Smelting of New Jersey, Inc. Bondholders' Litigation*, No. 84-cv-03199, 1989 U.S. Dist. LEXIS 16962 (D. N.J. June 29, 1989), the disclosures were made by a defendant who was "a Director, Secretary, Treasurer, and General Counsel of [the company]," *id.* at *38, and who, "at his deposition, . . . testified, without objection from his attorney, about the substance of [privileged] communications," *id.* at *32. But, as discussed, Acreage did not share privileged information with the Commission, and the only testimony at issue here was given by former officers who were unauthorized to waive Acreage's privilege. Neither case applies to the present circumstances, and neither case requires the Court to find that Acreage waived its privilege.

Acreage is not required to waive its privilege upon Leibowitz's request, and its withholding that waiver does not, in itself, work an unfairness for the Court to correct — even

20

though it hampers Leibowitz's advice-of-counsel defense. *See United States v. Wells Fargo Bank N.A.*, 132 F. Supp. 3d 558, 563 (S.D.N.Y. 2015) (holding that "the attorney-client privilege is not among" those privileges "that are qualified and can, therefore, be overcome by a showing of sufficient need"); *Leibowitz*, 2025 WL 2056026, at *5 n.2 ("[A]n employee must obtain his employer's waiver of the privilege to assert an advice-of-counsel defense."). Therefore, Leibowitz's request that the Court find waiver on the basis of fairness is denied.

### III.    Rule 502(d) Order

Finally, Leibowitz asks the Court to enter a discretionary order under Rule 502(d), and over Acreage's objections, requiring Acreage to produce privileged documents to Leibowitz but providing that such a production does not create a waiver, either in this case or "in any other federal or state proceeding." Br. at 28 (quoting Fed. R. Evid. 502(d)). Acreage argues that the request should be denied, because Rule 502(d) "serves as a protective mechanism" for discovery "rather than as a tool" to circumvent privilege. Opp. at 22. The Court agrees with Acreage.

Under Rule 502(d), the Court "may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court — in which event the disclosure is also not a waiver in any other federal or state proceeding." Fed. R. Evid. 502(d). By its plain terms, Rule 502(d) permits the Court to draw limits around the consequences of disclosures, but not to force parties to make those disclosures. Indeed, Rule 502(d) "contemplates enforcement of 'claw-back' and 'quick-peek' arrangements as a way to avoid excessive costs of pre-production review," Fed. R. Evid. 502(d) Advisory Committee Notes, but it "does not authorize a court to require parties to engage in [those] productions and should not be used directly or indirectly to do so." *Winfield v. City of New York*, No. 15-cv-05236 (LTS) (KHP), 2018 WL 2148435, at *4 (S.D.N.Y. May 10, 2018) (quoting The Sedona Conference, *The Sedona Conference Commentary on Protection of Privileged ESI*, 17 Sedona Conf. J. 1, 137 (2016)); *see*

*also BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, No. 09-cv-09783 (RWS), No. 09-cv-09784 (RWS), 2013 WL 2322678, at *9 (S.D.N.Y. May 21, 2013) (noting that Rule 502(d) "is designed to enable a court to enter an order . . . that will allow the parties to conduct and respond to discovery expeditiously . . . while still preserving each party's right to assert the privilege to preclude use in litigation of information disclosed in such discovery" (first alteration in original) (citation omitted))); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-04394 (AJN) (BCM), 2016 WL 2977175, at *3 (S.D.N.Y. May 20, 2016) (noting that Rule 502(d) permits a district court to "provide for return of [inadvertently disclosed] documents without waiver" (quoting Fed. R. Evid. 502(d) Advisory Committee Notes))).

Crucially, the Second Circuit has disapproved of an arrangement similar to the one Leibowitz asks the Court to fashion. *See In re Dow Corning Corp.*, 261 F.3d 280 (2d Cir. 2001) (per curiam). In *Dow Corning*, the plaintiff shareholders sought the production of unredacted minutes of the defendant company's board meetings. *Id.* at 282. Even though it acknowledged that those minutes were privileged, the district court ordered the company to produce them "under a protective order" providing, among other things, that the minutes "would be used only in connection with the present litigation" and that their production "would not constitute waiver." *Id.* at 282-83. The Second Circuit held that such a "compelled disclosure of privileged attorney-client communications, absent waiver or an applicable exception, [wa]s contrary to well established precedent," and further noted that it was unaware of any "authority . . . that holds that imposition of a protective order like the one issued by the district court permits a court to" require such a disclosure. *Id.* at 284. The lone case Leibowitz cites to support his request for a similar protective order here is an out-of-circuit district court opinion that conflicts with this binding Second Circuit precedent. *See* Br. at 27-29 (citing *United States Sec. & Exch. Comm'n v. TenFold Corp.*, No. 03-cv-00442, 2005 WL 7874298 (D. Utah. Aug. 19, 2005)). The Court

22

will not follow that opinion.  *See Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 272-73 (S.D.N.Y. 2008) (declining to follow "a district court opinion from another circuit," because "it is the rulings of the Second Circuit that bind this [c]ourt").

Therefore, Leibowitz's request for an order under Rule 502(d) compelling Acreage to produce privileged documents is denied.

## IV.     Documents for *In Camera* Review

Because the Court has found that Acreage did not waive its attorney-client privilege on the topics Leibowitz has identified, the Court denies Leibowitz's motion to compel the production of the documents submitted for *in camera* review on the basis of such a waiver.  *See* Br. at 26-27.  Nor is the Court swayed by Leibowitz's contention that Acreage's withdrawing its assertion of privilege over certain documents "call[s] into question privilege entries [on Acreage's privilege log] with the same or similar descriptions."  *Id*. at 25.  Indeed, "the fact that [Acreage] revised a prior privilege designation . . . to provide additional information to [Leibowitz] when it became clear that certain information had been withheld in error does not cast doubt on all remaining privilege assertions."  *Dimps v. N.Y.C. Dep't of Corr. & Cmty. Super.*, No. 17-cv-08806 (NSR) (AEK), 2025 WL 1733272, at *6 (S.D.N.Y. June 23, 2025).  Nevertheless, the Court has reviewed each of the documents that Acreage submitted for *in camera* review, which "Leibowitz believes . . . are likely not privileged and should be produced."  Br. at 13.  The Court addresses each document individually below.

### A.     Legal Standard

As discussed, "[t]he attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *Mejia*, 655 F.3d at 132. "Communications with in-house counsel in the role of attorney-advisor" are protected by the

23

privilege, but "communications conveying business (as opposed to legal) advice are excluded from the privilege." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 70 (S.D.N.Y. 2010). The difference between business and legal advice is that the latter "[f]undamentally . . . involves the interpretation and application of legal principles to guide future conduct or to assess past conduct . . . [and] requires a lawyer to rely on legal education and experience to inform judgment." *Erie*, 473 F.3d at 419.

Notwithstanding that distinction, "documents may 'qualify as privileged because they consist of "information [sent] to corporate counsel in order to keep them apprised on ongoing business developments, with the expectation that the attorney will respond in the event that the matter raises important legal issues."'" *TVT Records v. Island Def Jam Music Grp.*, 214 F.R.D. 143, 150 (S.D.N.Y. 2003) (quoting *In re Buspirone Antitrust Litig.*, 211 F.R.D. 249, 253 (S.D.N.Y. 2002)). Even in that situation, however, "the implied request for advice must still be the primary reason for the communication in order for the privilege to attach." *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 324 (S.D.N.Y. 2020). "Because of the dual roles of in-house counsel," these communications "must be scrutinized carefully to determine whether the predominant purpose . . . was to convey business advice and information or, alternatively, to obtain or provide legal advice." *Mölnlycke Health Care US, LLC v. Greenwood Mktg., LLC*, No. 22-cv-03719 (CS) (JCM), 2024 WL 4602138, at *2 (S.D.N.Y. Oct. 29, 2024) (quoting *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, No. 18-cv-11386 (VSB) (KHP), 2021 WL 3524081, at *2 (S.D.N.Y. Aug. 10, 2021)); *but see Centiva*, 2025 WL 2782804, at *8 ("The mere fact that an attorney is copied on the email does not transform its content into one that can satisfy the demands of attorney-client privilege . . . ."); *United States v. Correia*, 468 F. Supp. 3d 618, 622 (S.D.N.Y. 2020) ("[T]he 'mere transmittal of non-privileged documents' is not a privileged communication." (quoting *TVT Records*, 214 F.R.D. at 149)).

24

B.    **Privilege Determinations**

*Acreage Privilege Log ("APL") Ref. No. 15-16* is not privileged.  Acreage designated this document privileged because it "[r]equests and provides legal advice regarding budget review" and "[r]eflects legal advice regarding" the same.  Rowe Decl. Ex. E Ref. 15-16.  The Court disagrees.  This email chain shows Leibowitz signing off on the final version of a slide deck for Acreage's 2020 Budget Review and directing another employee to send that slide deck to Acreage's legal department "to load."  In complying with that directive, the employee does not seek legal advice, and the recipient does not provide legal advice; the email merely transmits the final slide deck (followed by two updated versions) to counsel.  And counsel's response is only to commend the finance department for being first to provide materials to post for the Board's budget review.  There is no indication in these communications that their primary purpose was to request or provide legal advice.  *See Aenergy*, 451 F. Supp. 3d at 324.  Acreage must produce this document to Leibowitz.

*APL Ref. No. 23-24* is not privileged.  Acreage designated this document privileged because it "[p]rovides information for purposes of legal advice regarding cash forecast."  Rowe Decl. Ex. E Ref. 23-24.  Nothing in the document suggests such a purpose other than the fact that Doherty is a recipient (along with Murphy).  *See Centiva*, 2025 WL 2782804, at *8 ("The mere fact that an attorney is copied on the email does not transform its content into one that can satisfy the demands of attorney-client privilege . . . .").  The body of the email is blank, and neither Doherty nor Murphy responds.  There is no indication in this document or in any materials presented to the Court that "the primary reason for th[is] communication" is to seek legal advice.  *Aenergy,* 451 F. Supp. 3d at 324.  Acreage must produce this document to Leibowitz.

*APL Ref. No. 29-30* is not privileged.  Acreage designated this document privileged because it "[p]rovides information for purposes of legal advice regarding cash forecast."  Rowe

Decl. Ex. E Ref. 29-30.  However, the document is only a meeting invite from Doherty to various attendees, with subject line "Board Call to provide Update."  The invite attaches a spreadsheet "that will be discussed during the call tonight," titled "Acreage Holdings Cash Flow Schedule."  The email contains no legal advice from Doherty or response from any of the meeting attendees, and there is no indication that the primary purpose of the communication (or even the scheduled meeting) was to obtain or provide legal advice, rather than to discuss business matters (i.e. Acreage's finances).  *See Aenergy*, 451 F. Supp. 3d at 324; *Mölnlycke Health Care*, 2024 WL 4602138, at *2; *see also Gucci Am.*, 271 F.R.D. at 79 n.12 (finding "internal communications among [corporate] personnel scheduling a conference call related to [a business matter]" not privileged where they "reveal no underlying legal advice, and the fact that a conference call took place, even if it were with outside counsel, is not privileged").  Acreage must produce this document to Leibowitz.

*APL Ref. No. 68-69* solicits comments from Acreage's legal department on Acreage's 2019 financial statements.  The Court agrees with Acreage's designation, *see* Rowe Decl. Ex. E Ref. 68-69, and this document has been properly withheld as privileged.

*APL Ref. No. 81-83* contains legal advice from Doherty.  The Court agrees with Acreage's designation, *see* Rowe Decl. Ex. E Ref. 81-83, and this document is protected from disclosure.  Leibowitz's contention that Acreage has waived privilege over this document because it contains information that "presumably relates to" certain testimony Doherty provided, Br. at 13-14, is speculative, and in any event Doherty's testimony did not waive Acreage's privilege.  *See Weintraub*, 471 U.S. at 349; *Fitzpatrick*, 272 F.R.D. at 108; *Ambrose*, 2011 WL 13290651, at *10.

*APL Ref. No. 84* contains a request for legal advice.  The Court agrees with Acreage's designation, *see* Rowe Decl. Ex. E Ref. 84, and this document is appropriately redacted.

26

*APL Ref. No. 86* contains a portion of Ref. No. 84, as well as communications from counsel, and is appropriately redacted.

*APL Ref. No. 87* is duplicative of Ref. No. 84 and is appropriately redacted for the same reason.

*APL Ref. No. 89* contains legal strategy concerning the whistleblower complaint.  The Court agrees with Acreage's designation, *see* Rowe Decl. Ex. E Ref. 89, and this document is appropriately redacted.

*APL Ref. No. 91* contains a request for and provision of legal advice.  The Court agrees with Acreage's designation, *see* Rowe Decl. Ex. E Ref. 91, and this document is appropriately redacted.  The fact that Acreage withdrew its privilege assertion over the December 22, 2019 email chain does not mean that this document, which Acreage describes as reflecting legal advice on the same subject, must also be disclosed.  *Dimps*, 2025 WL 1733272, at *6 ("revis[ion] [of] a prior privilege designation . . . does not cast doubt on all remaining privilege assertions").

*APL Ref. No. 92* is duplicative of Ref. No. 89 and is appropriately redacted for the same reason.

*APL Ref. No. 93* contains a request for and provision of legal advice concerning the whistleblower complaint.  The Court agrees with Acreage's designation, *see* Rowe Decl. Ex. E Ref. 93, and this document is appropriately redacted.

*APL Ref. No. 94* is not privileged.  Acreage designated this document privileged because it "[p]rovides information for purposes of legal advice regarding Prime ATC board issues." Rowe Decl. Ex. E Ref. 94.  However, the document is part of the December 22, 2019 email chain discussed earlier in this Opinion; the only difference is that, in this document, Robert Daino forwards the initial email in the chain to Doherty, writing the body of the email only "Here you go…."  That message does not specifically seek legal advice, the document does not include any

response from Doherty providing legal advice, and there is no other indication in this document that Daino's primary purpose in communicating with Doherty was to request legal advice. *See Aenergy*, 451 F. Supp. 3d at 324. Acreage must produce this document to Leibowitz.

*APL Ref. No. 95* is duplicative of Ref. No. 84 and is appropriately redacted for the same reason.

*APL Ref. No. 99* contains a request for legal advice. The Court agrees with Acreage's designation, *see* Rowe Decl. Ex. E Ref. 99, and this document is appropriately redacted. The fact that Acreage withdrew its privilege assertion over the December 22, 2019 email chain does not mean that this document, which Acreage describes as reflecting legal advice on the same subject, must also be disclosed. *Dimps*, 2025 WL 1733272, at *6.

*APL Ref. No. 126* contains legal strategy concerning the whistleblower complaint. The Court agrees with Acreage's designation, *see* Rowe Decl. Ex. E Ref. 93, and this document is appropriately redacted.

*Doherty Privilege Log ("DPL") Ref. No. 10* contains a request for legal advice. The Court agrees with Acreage's designation, *see* Rowe Decl. Ex. F Ref. 10, and this document is protected from disclosure.

*DPL Ref. No. 14-21* contains requests for, and provision of, legal advice. The Court agrees with Acreage's designation, *see* Rowe Decl. Ex. F Ref. 14-21, and this document is protected from disclosure.

*DPL Ref. No. 22-23* contains information concerning legal advice. The Court agrees with Acreage's designation, *see* Rowe Decl. Ex. F Ref. 22-23, and this document is protected from disclosure.

**CONCLUSION**

Therefore, Leibowitz's motion to compel is GRANTED to the extent that Acreage must produce to Leibowitz the documents at APL Ref. Nos. 15-16, 23-24, 29-30, and 94, and the motion is otherwise DENIED. The parties are reminded to comply with the Court's September 5, 2025 Order, *see* Dkt. 41, and file a revised Case Management Plan reflecting that fact discovery will close 60 days after the date of this Opinion. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 49.

Dated: December 30, 2025
        New York, New York

                        SO ORDERED.

                        _____
                        JENNIFER L. ROCHON
                        United States District Judge

29